Filed 10/21/20  P. v. Jordan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KRISTOPHER RYAN JORDAN,<br><br>Defendant and Appellant. | C087672<br><br>(Super. Ct. No. 16FE018631) |

A jury convicted defendant Kristopher Ryan Jordan on seven counts of felony molestation of a child, as well as one count of misdemeanor annoying or molesting another child.  The trial court sentenced him to 50 years and 30 days in prison.

Defendant now contends (1) this court should review the victims' confidential school records to determine whether there was discoverable evidence in those records; (2) the trial court abused its discretion and violated his constitutional rights when it allowed a defense expert to testify concerning 18 factors to consider regarding whether bias or suggestibility affected the interview of a child witness, but did not allow the

1

expert to apply those factors to the circumstances of this case; (3) the trial court abused its discretion and violated his right to present a defense when the trial court sustained the prosecutor's objection to a question concerning whether the witness had ever seen the victims' mother spank them; (4) we must reverse the misdemeanor conviction for annoying or molesting a child under Penal Code section 647.6,[1] which includes motive as an element of the offense, because the trial court instructed the jury that motive was not an element of any offense; (5) we must also reverse the misdemeanor conviction for annoying or molesting a child because the trial court limited cross-examination of the victim of that offense; (6) we must vacate the fines and assessments imposed by the trial court because the trial court did not determine defendant's ability to pay them; and (7) defendant's trial counsel provided constitutionally deficient representation because he failed to disabuse the trial court of the belief that the minimum restitution fines under sections 1202.4, subdivision (b) and 1202.45, subdivision (a) were $2,250 each, instead of $300 each.

We conclude (1) after review of the confidential school records, we agree with the trial court that they contained no discoverable evidence; (2) the trial court did not abuse its discretion or violate defendant's constitutional rights when it limited the testimony of the defense's expert; (3) the trial court did not abuse its discretion or violate defendant's constitutional rights in excluding testimony regarding whether the witness had ever seen the victims' mother spank them; (4) we must reverse the misdemeanor conviction for annoying or molesting a child because the trial court instructed the jury that motive was not an element of any offense; (5) we need not consider whether the trial court erred by limiting cross-examination of the victim of the misdemeanor count because we have determined the conviction must be reversed; (6) we will remand the matter to give the

---

[1] Undesignated statutory references are to the Penal Code.

trial court an opportunity to determine defendant's ability to pay the imposed fines and assessments; and (7) we need not determine whether trial counsel's representation was deficient as to the minimum amount of the restitution fines because defendant can raise that issue on remand.

We will reverse the conviction for misdemeanor annoying or molesting a child, vacate the 30-day sentence for that count, and remand the matter to give the trial court an opportunity to determine defendant's ability to pay. We will otherwise affirm the judgment.

## BACKGROUND

The victims were a sister and brother. E. was a girl born in 2002, and Ai. was a boy born in 2004. The information further alleged defendant molested Au., a boy born in 2009, but the jury either acquitted defendant or failed to reach a verdict on the counts relating to Au. The victims lived with their mother, J. Defendant was the husband of J.'s sister, Kimberly.

In 2014, Kimberly and defendant took E. and Ai. on an overnight trip to San Francisco. During the San Francisco trip, Ai. wet his pants. Defendant and Ai. left the others to go to a restroom. The restroom was a single stall. Defendant and Ai. entered together, and defendant used the bathroom first. Ai. then used the bathroom, standing up. Ai. asked defendant to look away, but defendant continued to watch Ai. After Ai. finished using the bathroom, defendant sat down on the toilet and held Ai. down across defendant's legs. While Ai. struggled to get away, defendant spanked Ai. and fondled Ai.'s penis, moving his hand back and forth. Defendant told Ai. not to say anything about what happened.

Ai. was afraid of defendant because, when defendant got mad, he sometimes pulled Ai.'s pants and underwear down and spanked him hard on the buttocks. Because Ai. was afraid of defendant, Ai. sometimes wet himself when he was around defendant.

3

On another occasion, in a bedroom at defendant's apartment, defendant pulled Ai.'s pants and underwear down to his knees. Defendant sat down and pulled Ai. over his legs. He then spanked Ai. and fondled his penis until Kimberly walked in. Kimberly yelled at defendant, and Ai. pulled up his pants and left the room.

On yet another occasion, defendant took Ai. on a camping and hunting trip. On the way, defendant stopped and bought baby lotion. While they were hunting, defendant spanked Ai. with his pants and underwear down around 40 times because Ai. called defendant Kris, instead of Uncle Kris. In the tent that night, defendant rubbed baby lotion on Ai.'s body and eventually fondled Ai.'s penis and tried to put his finger in Ai.'s anus while holding Ai. down. Defendant made Ai. wear pink diapers on that trip.

On the same trip, while they were out hunting, Ai. wet himself and did not say defendant's name the way defendant wanted him to. Defendant pulled down Ai.'s pants and diaper, put Ai. over his legs, spanked Ai., and touched Ai.'s buttocks.

On a fishing trip, defendant took Ai. to a portable restroom. Inside the portable restroom, defendant spanked Ai. hard at least 10 times and fondled Ai.'s penis.

E. accompanied defendant to a drive-through car wash. In the car wash, defendant offered to give E. a piece of candy if she showed him her underpants. E. refused, and defendant dropped the matter. Defendant told E. not to tell anyone about it.

A jury convicted defendant of seven counts of molesting Ai. (§ 288, subd. (b)(1).) It also convicted defendant of misdemeanor annoying and molesting E. (§ 647.6, subd. (a).) The trial court sentenced defendant to five consecutive 10-year terms and two concurrent 10-year terms for the counts related to Ai., plus a consecutive 30-day term for the count relating to E.

## DISCUSSION

## I

Defendant subpoenaed confidential school records for E., Ai., and Au. After the records were delivered to the trial court, defendant moved for the trial court's review of

4

the records and release of any information of lying, deceitfulness, or moral turpitude. Defendant also asked the trial court to review the records for information that would be helpful to a defense expert on the issues of child sexual assault accommodation syndrome, suggestibility and the capability of fabricating allegations. The trial court agreed to do an in camera review of the records to determine if there was any discoverable evidence. After it reviewed the records, the trial court asked defense counsel to confirm that the scope of the request was for records relating to, or providing evidence of, deceitfulness and lying, or any disclosure related to the allegations in the case. Defense counsel agreed. The trial court said it reviewed the records for each of the children page by page and there were no records related to any of those topics.

School records are confidential. (Ed. Code, § 49076; *Rim of the World Unified School Dist. v. Superior Court* (2002) 104 Cal.App.4th 1393, 1396.) Because they are confidential and therefore not initially discoverable, defendant has requested that this court review the records to determine whether any discoverable evidence relating to the issues in this case should have been disclosed to the defense. The Attorney General does not object to our review of the records. We review the trial court's ruling on whether any evidence in the school records was discoverable under the abuse of discretion standard. (*Hill v. Superior Court* (1974) 10 Cal.3d 812, 816-817.) "[The California Supreme Court] routinely independently examines the sealed records of such in camera hearings to determine whether the trial court abused its discretion in denying a defendant's motion for disclosure of . . . records. [Citations.]" (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.)

We have reviewed the confidential school records, which include records from the schools attended by E., Ai., and Au. Our review revealed no records relevant to lying, deceitfulness, or moral turpitude. Furthermore, we found no records that would be helpful to a defense expert on the issues of child sexual assault accommodation

5

syndrome, suggestibility and the capability of fabricating allegations. We found nothing that should have been disclosed regarding the allegations in the case.

We agree with the trial court that there is no discoverable evidence in the school records.

II

Defendant contends the trial court abused its discretion and violated his constitutional rights when it allowed a defense expert to testify about factors to consider in assessing whether bias or suggestibility affected a child witness interview, but did not allow the expert to apply those factors to the circumstances of this case.

Dr. William O'Donahue testified for the defense as an expert in suggestibility and forensic interviewing of child witnesses. He testified concerning 18 factors to consider in evaluating forensic interviews with children. For each factor, Dr. O'Donahue provided an explanation and gave examples. Dr. O'Donahue also testified about research showing that between 70 and 90 percent of children are very susceptible to improper interview techniques, resulting in improper influence on the child's answers. He said false allegations by children occur, but most allegations are true.

Before trial, defendant asked that the trial court allow the defense to question Dr. O'Donahue concerning the application of the 18 factors to the interviews of the children in this case. The trial court denied the request, concluding such questions would invade the purview of the jury to determine the credibility of the child witnesses.

"A trial court's decision as to whether a particular subject is a proper one for expert opinion is reviewed for abuse of discretion." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1118.) While Dr. O'Donahue was sufficiently qualified to testify regarding the theories of bias and suggestibility of interview techniques on a child generally, the trial court did not abuse its discretion by precluding him from testifying concerning how to apply the general principles to the evidence concerning the three child witnesses in this case. (*People v. Page* (1991) 2 Cal.App.4th 161, 186-187 (*Page*).)

6

In *Page*, the defense's expert testified concerning the psychological factors that could lead to a false confession. However, the trial court denied the defense's request to have the expert further testify concerning how to apply those factors to the circumstances in that case. (*Page, supra,* 2 Cal.App.4th at p. 183.) The Court of Appeal concluded the limitation on the expert's testimony was not an abuse of discretion and did not violate the defendant's due process rights because it was not a blanket exclusion of defense evidence and the admitted evidence allowed the jury to apply the expert's information to the facts of the case. (*Id.* at pp. 186-189.)

Defendant contends *Page* is distinguishable because it dealt with false confessions, while this case deals with bias and suggestibility in the interviews of child witnesses. Defendant argues: "Just because it might not have been helpful to the jurors for an expert on false confessions to apply the factors on false confessions that he discussed in his testimony to a specific confession does not mean the same is true with respect to O'Donahue's 18 factors on suggestibility and the specific interviews in this case." But defendant does not explain why such a difference is significant. Here, as in *Page*, the expert testified concerning the general principles to be applied to interpreting the evidence, and the jury then had the opportunity to apply those principles. The process is appropriate and adequate in both circumstances.

Defendant further asserts that *Page* should not be read as imposing a blanket rule precluding expert witnesses from ever applying general principles to the facts of a case. We agree that is not the holding of *Page;* it does not impose a blanket rule. Rather, *Page* stands for the proposition that it may not be an abuse of discretion if the trial court excludes expert testimony on how to apply general principles to the evidence specific to the case. On this particular record, we conclude the trial court did not abuse its discretion.

Defendant argues Dr. O'Donahue should have been allowed to apply the 18 factors to the interviews of the child witnesses in this case because his opinion would

7

have been helpful to the jury. But defendant also acknowledges the jury was "presumably capable of applying the 18 factors to the individual interviews." If the jurors were capable of applying the factors, then exclusion of the expert testimony was not an abuse of discretion. (*Page, supra,* 2 Cal.App.4th at pp. 188-189.)

Defendant next argues the limitation of the expert's testimony violated his constitutional rights because it prevented him from presenting a defense. (See *Crane v. Kentucky* (1986) 476 U.S. 683 [90 L.Ed.2d 636] [defendants have constitutional right to present a defense].) In making this argument, defendant disagrees with *Page's* conclusion that there was no constitutional violation because there was no blanket exclusion of relevant expert evidence. (*Page, supra,* 2 Cal.App.4th at pp. 184-187.) However, we agree with the holding in *Page* and see no reason to deviate from it. Here, the defense expert testified concerning the factors to be applied, and the jury had the opportunity to apply those factors. Therefore, the trial court did not prevent defendant from presenting a defense.

### III

Defendant contends the trial court abused its discretion and violated his right to present a defense when it precluded asking E. whether she had seen J. spank Ai. or Au.

During cross-examination of E., defense counsel asked her whether she had ever seen her mother, J., spank Ai. or Au. The prosecutor objected to the question based on relevance, and the trial court sustained the objection. Later, outside the presence of the jury, defense counsel made a record of the reasons for the question. Defense counsel said he had a good faith belief E. would testify that she had seen J. spank Ai. and Au. He said that the question was relevant to whether J. approved of spanking. If J. had spanked Ai. or Au., it would dispel the jury's prejudice against defendant as having used a form of discipline unacceptable to their mother. Defense counsel also asserted that an affirmative

8

answer from E. would impeach J., who testified she did not spank Ai. or Au.[2] The prosecutor argued that J.'s spanking of her children would not excuse defendant's actions and that defendant's spankings were administered to intimidate the children and facilitate the molestations. The trial court reiterated its sustaining of the objection on relevance grounds and also excluded the evidence under Evidence Code section 352.

"Evidence Code section 350 provides that only relevant evidence is admissible. Evidence Code section 210, in turn, defines relevant evidence as that 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' ' " ' "The test of relevance is whether the evidence tends ' "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.' " ' " ' [Citation.] [¶] 'Inferences drawn from the evidence must be logical and reasonable, not merely speculative.' [Citation.]" (*People v. Ghobrial* (2018) 5 Cal.5th 250, 282). Trial courts have broad discretion to exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "We review rulings regarding relevancy and Evidence Code section 352 under an abuse of discretion standard. [Citation.]" (*People v. Linton* (2013) 56 Cal.4th 1146, 1181.)

Even if whether E. saw J. spank Ai. and Au. was relevant to J.'s credibility and also relevant to whether defendant's spankings were inconsistent with J.'s parenting style, those issues were tangential to the main issues relating to defendant's guilt.

---

[2] The parties do not discuss it, but J. appears to have testified that she spanked her children when they were younger, but not to the extent it would leave a mark. The testimony included gestures made by J., which seem to indicate some kind of corporal punishment, but the gestures were not preserved for the record.

The question also had the possibility of confusing the issues for the jury because the jury was called upon to judge the actions of defendant, not J., in determining guilt. The probative value of the proposed evidence was substantially outweighed by its minimal relevance and the danger of confusing the issues under Evidence Code section 352. Therefore, the trial court did not abuse its discretion in excluding the answer.

Exclusion of E.'s answer concerning whether she had seen J. spank Ai. and Au. also did not violate defendant's constitutional right to present a defense. "As a general proposition, the ordinary rules of evidence do not infringe on a defendant's right to present a defense." (*People v. Frye* (1998) 18 Cal.4th 894, 945, overruled on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Exclusion of the answer was well within the trial court's discretion and the question did not pertain to the main issues relating to defendant's guilt, so there was no constitutional violation. (*Id.* at p. 946.)

IV

Defendant contends we must reverse the misdemeanor conviction for annoying or molesting a child (§ 647.6 -- count XIII), which includes motive as an element of the offense, because the trial court instructed the jury, using CALCRIM No. 370, that "[t]he People are not required to prove that the defendant had a motive to commit any of the crimes charged." The Attorney General agrees the conviction must be reversed because the unmodified instruction was erroneous and was not harmless beyond a reasonable doubt.

The misdemeanor count related to the discussion defendant had with E. in a drive-through car wash. E. testified that defendant offered her a piece of candy if she would show him her underpants. She refused. Defendant told her not to tell anyone about the incident.

Section 647.6 proscribes conduct directed at a child if the conduct is motivated by an abnormal sexual interest in children in general or a specific child. (§ 647.6, subd. (a).)

10

Although the trial court properly instructed the jury on this element, it also instructed the jury that motive was not an element of any of the crimes charged. (CALCRIM No. 370.)

Because motive is an element of section 647.6, it is error to give CALCRIM No. 370 in a case involving section 647.6 without modifying the standard instruction to exclude section 647.6 from the general statement that motive is not an element. (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1164 (*Valenti*).) In *Valenti*, the defendant was charged with a violation of section 647.6. (*Valenti,* at pp. 1164-1165.) The court there correctly instructed the jury on the elements of section 647.6, but also instructed with CALCRIM No. 370 that the prosecution need not prove motive. (*Valenti,* at pp. 1164-1165.) Finding that the contradictory instructions were erroneous, the appellate court also found that the error, as a due process violation, was subject to the harmless-beyond-a-reasonable-doubt standard. It determined the error was not harmless because there was evidence from which the jury could have concluded the defendant's conduct was not motivated by an abnormal sexual interest in children. (*Id*. at p. 1167.)

The Attorney General acknowledges that we must reverse because there was substantial evidence defendant was not motivated by an abnormal sexual interest in children when the subject of underwear came up with E. at the car wash. Defendant testified that he talked to E. about boys possibly wanting to see her underwear and told her that she could say no. He denied asking to see her underwear. The Attorney General agrees that, with this evidence that defendant meant to warn E. about the motives of boys and not to see her underwear himself, the jury could have found that defendant's discussion with E. was not motivated by an abnormal sexual interest in children. Therefore, we cannot say the instructional error was harmless beyond a reasonable doubt, and we must reverse the conviction. (*Valenti, supra,* 243 Cal.App.4th at p. 1167.) We also vacate the 30-day consecutive sentence imposed for that count.

V

Defendant also contends we must reverse his misdemeanor conviction for annoying or molesting a child (§ 647.6 -- count XIII) because the trial court limited his cross-examination of E., the victim.  We need not consider this contention because we have already determined the misdemeanor count must be reversed.

VI

Defendant further contends we must vacate the fines and assessments imposed by the trial court because the trial court did not determine his ability to pay them.

When the trial court sentenced defendant, it imposed the following fines and assessments:

- a $2,250 restitution fine under section 1202.4, subdivision (b);
- a $2,250 parole revocation fine under section 1202.45, subdivision (a);
- a $320 court operations assessment under section 1465.8, subdivision (a); and
- a $240 court facility assessment under Government Code section 70373.

The trial court and counsel discussed minimizing the fines and assessments so that defendant might better afford to pay direct victim restitution, and defense counsel made a comment about defendant's indigence.  The trial court stated it would impose minimum fines and assessments and struck those it could strike.  (Defendant argues in the next part of this opinion that his trial counsel was ineffective in failing to disabuse the trial court of the belief that the minimum restitution fines were $2,250 rather than $300.)

Citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendant contends the trial court was required to conduct an ability to pay hearing before ordering him to pay the fines and assessments.  He requests that we vacate the fines and assessments and remand the matter to the trial court to conduct a hearing on his ability to pay the fines and assessments.  The Attorney General argues defendant forfeited his claim because he failed to raise the issue in the trial court and, if the issue was not forfeited, *Dueñas* was wrongly decided and should not be followed.

12

As the court explained in *People v. Castellano* (2019) 33 Cal.App.5th 485, the statutes authorizing imposition of the challenged fine and assessments did not reference consideration of ability to pay, and in fact, section 1202.4, subdivision (c) precluded such consideration. (*Castellano,* at p. 489.) The court explained that when, as here, the defendant's challenge is based on a newly announced constitutional principle, reviewing courts have declined to find forfeiture. (*Ibid*.; but see *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1154 [*Dueñas* claim forfeited where trial court increased restitution fine above the minimum].) We decline to find forfeiture here, where there was some discussion of defendant's ability to pay in the trial court, the trial court indicated it intended to impose minimum fines, and *Dueñas* was decided after sentencing in this case.

In *Dueñas,* the court held it is improper to impose certain fines or assessments without determining defendant's ability to pay. (*Dueñas, supra*, 30 Cal.app.5th at pp. 1168, 1172.) Although some courts have subsequently criticized *Dueñas*'s legal analysis (see, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946), *Dueñas* remains citable precedent. Until the California Supreme Court has had an opportunity to resolve the current split in authority, we conclude it is appropriate to remand the matter to give the trial court an opportunity to determine defendant's ability to pay the imposed fines and assessments.

VII

Defendant contends his trial counsel provided constitutionally deficient representation because counsel failed to disabuse the trial court of the belief that the minimum restitution fines under section 1202.4, subdivision (b) and section 1202.45, subdivision (a) were $2,250 instead of $300. (See *People v. Sencion* (2012) 211 Cal.App.4th 480, 482-483 [one fine per case, not per conviction].) We need not address this contention because, on remand, defendant may assert the minimum amounts as appropriate.

DISPOSITION

The misdemeanor conviction for annoying or molesting a child under section 647.6 (count XIII) is reversed and the sentence imposed on that count is vacated, and the matter is remanded for retrial on that count. The matter is also remanded to give the trial court the opportunity to determine defendant's ability to pay the fines and assessments. In all other respects, the judgment is affirmed.


_____/S/_____
MAURO, J.


I concur:


_____/S/_____
ROBIE, Acting P. J.

DUARTE, J., Concurring and Dissenting.


I disagree with the conclusion that remand is appropriate under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), to permit a hearing on defendant's ability to pay. Because the majority appears to come to that conclusion in Part VI of its opinion, I respectfully dissent from Part VI and the related portion of the Disposition and otherwise concur.

Our Supreme Court is now poised to resolve the question of whether *Dueñas* was correctly decided, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373.5. (*Kopp*, at pp. 95-96, review granted.)

In the meantime, I agree with those authorities that have concluded that due process does not require the trial court to conduct a hearing and conclude that the defendant has the present ability to pay before imposing the assessments and restitution fines at issue here and in *Dueñas*. (See, inter alia, *People v. Hicks* (2019) 40 Cal.App.5th 320, 327-329, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)


                                                  /S/
                                       DUARTE, J.

1